## Hugus v. Strickler.

1. Appeal: REVENUE STAMP.  To perfect an appeal from a judgment of a justice of the peace to the District Court, it is necessary to affix the stamp required by the revenue act of June 30th, 1864, to some paper or

process connected with the record. When a written notice of appeal is given, it should be attached thereto; when no written notice is given, it may be affixed to the bond or transcript.

2. **Statutes:** CONSTRUCTION OF STAMP LAWS. The recognized rule to construe penal acts strictly, applies to the federal stamp laws.

3. **Stamps:** PENALTY: INTENT. While the intent to defraud the government is essential to a liability for the penalty for omitting to place a stamp on any instrument as required by the revenue act of 1864; when the stamp is omitted, the instrument is invalid notwithstanding the intent. The courts have no power to supply such a defect when it exists — it can be done only in the manner pointed out by the statute.

*Appeal from Johnson District Court.*

TUESDAY, JANUARY 9.

PLAINTIFF was unsuccessful in an action before a justice of the peace, tried on the 10th of December, 1864. On the same day, he perfected, as he supposed, his appeal, and the transcript was duly filed in the District Court. Defendant afterwards, in May, 1865, moved to dismiss the appeal, for the reason that no revenue stamp was attached, either to the bond, transcript or other part of the appeal record. Pending the consideration of this motion, plaintiff offered and proposed to affix the proper stamp, as required by the act of congress, to amend or file a new bond. This the court refused to allow, sustained the motion to dismiss, and plaintiff appeals.

*W. E. Miller* for the appellant.

*Fairall & Boal* for the appellee.

WRIGHT, J. — Counsel admit that this case involves a construction of § 158 of the act of congress of June 30, 1864, and a part of schedule B of the same act, which are as follows:

1. APPEAL: revenue stamp.

"§ 158. Any person or persons, who shall make, sign or issue, or who shall cause to be made, signed or issued,

any instrument, document or paper of any kind or description whatever, or shall accept or pay, or shall cause to be accepted or paid, any bill of exchange, draft or order, or promissory note, for the payment of money, without the same being duly stamped, or having thereupon an adhesive stamp, denoting the duty chargeable thereon, with intent to evade the provisions of this act, shall, for every such offense, forfeit the sum of two hundred dollars, and such instrument, document or paper, bill, draft, order or note, shall be declared invalid and of no effect." Laws 38th Cong.

Schedule B. "Writs, or other process, on appeal from justice's court, or other courts of inferior jurisdiction, to a court of record, shall be liable to a stamp duty of fifty cents."

Appellant does not deny that the stamp should have been annexed, in order to the validity of his appeal. In other words, he does not insist that he was not required to affix the stamp provided for in the schedule, to some paper or process, in perfecting his appeal, and that he was thus required has been recognized by this court, in the case of *Mussellman* v. *Mauk*, 18 Iowa, 239; *Grinnell* v. *Mississippi and Missouri Railroad Company*, Id., 570. (*Brayton* v. *Delaware Company*, 16 Id., 44, arose under the former statute and depended upon different facts.) He claims, however, that unless the omission to place the proper adhesive stamp involved *an intent to evade the provisions of the revenue law*, the appeal should not have been dismissed, and that the mere failure to thus affix the stamp, without something to show the intention to evade, would not make void or invalid the bond. And he also claims that the court below should have allowed him to affix the stamp or to have executed a new bond, as he offered to do, before the disposition of a motion to dismiss.

We suppose where notice of appeal in writing is given, it would be proper to treat this as the *process* within the

meaning of the act, and to affix the stamp to it. Under our statute, however, where the appeal from the judgment of a justice is taken on the day of its rendition, such notice is not necessary, and of course there is no such paper or process to which it could be attached. In such a case, it might properly be attached to the bond or transcript. We cannot conceive why either might not be sufficient, though, perhaps, more properly, it should be upon the bond, as this comes more nearly within the language of the act, in speaking of making or issuing " any instrument, document or paper of any kind." Not only so, but this, in the absence of the appeal notice, would partake more of the nature of " process " than the transcript. However this may be, we are clear, that the absence of the notice of appeal does not obviate the necessity of a stamp upon some paper, or writing, in connection with the appeal.

Appellee insists, that though the intention to evade the statute must exist before the party would incur the penalty of two hundred dollars, the writing is void and of no effect if the stamp is not affixed, whether omitted by accident or design. He also insists, that being omitted, the design to evade arises as a legal presumption in the absence of proof to the contrary, and that the statute gives no right to affix the stamp at the time or after objections are made to the validity of the instrument.

2. STAT-
UTES; con-
struction of
stamp laws.

The question is not free from difficulty. We have but one duty to perform, and that is, to ascertain the intention and declare the meaning of the law. The recognized rule of construing penal statutes strictly, and giving a liberal interpretation to words of exception contained therein, should, in our opinion, be applied to our stamp laws. They are directly penal and clearly in restraint of common right. While these charges upon the people should be imposed by clear and unambiguous words, yet no interpretation should be adopted which will defeat the purpose

of the law, if the language fairly and naturally admits of an interpretation which sustains that purpose. *Sprague* v. *Birdsall*, 2 Cow., 419; *Sewall* v. *Jones*, 9 Pick., 413; 3 Pars. on Cont., 287; *Denn* v. *Diamond*, 4 B. & C., 243; *Smith* v. *Spooner*, 3 Pick., 229.

The object and purpose of this law is to assist in raising revenue to support the government. To insure its observance, and make more certain the accomplishment of the object proposed, penalties are affixed for its violation, some of them apparently harsh and severe; and yet, notwithstanding all these provisions and the utmost watchfulness, the law is, in many instances, evaded, and the government, either from accident or design, deprived of a part of its just revenue. To make the law effective, the penalties must needs be severe, and the consequences resulting from a failure to comply with its provisions certain and imperative. The courts of the country ought to keep in view the policy of the law, and avoid those technical constructions which would be calculated to cripple and render inefficient its operation. The construction given to the statute by the proper executive officers should be regarded, and though not having the force of a judicial construction, is entitled to much weight, if for no other reason that there may be no conflict in the two departments of the government in applying and executing the law.

There can be no doubt that the "intention to evade," is necessary to render the party liable to the penalty of

3. STAMP: penalty: intent. two hundred dollars. And yet we know full well, that if such instruments are held valid, in all cases where there was no such intention, in untold instances almost, the government would be liable to injury and loss. For if there was no wrongful intent, there is no penalty; and if the instrument is valid, the party obtains the full benefit of his contract without the stamp; and thus it occurs, that the government would continually be

practically defrauded and defeated in its effort to raise revenue. The act nowhere gives to the courts the power to authorize the affixing of the omitted stamp. The instrument, as it stands, without the stamp, is either valid or invalid, and the judiciary cannot assist in supplying the fatal defect, if such exists. A former law allowed the party to supply the defect, but aside from the right to do this, given by positive statute, we do not understand it to exist either under the English statute or ours. In addition to this, we know that the commissioner of internal revenue construes the law to declare the instrument void, without reference to the intention. Report of 1865. As before stated, this construction is entitled to weight, and seeming to be necessary to carry out the purpose and object of the law, and as the language fairly and reasonably warrants it, we adopt it, holding as a consequence that the "process" was void.

The power given to the court, to allow an amendment of a defective bond or other security (Rev., 4119), cannot, in our opinion, aid appellants. Assuming the validity of the federal legislation, we must carry out its letter and spirit. If the process or instrument is void (and the law says it is "invalid and of no effect"), then it is the same as if it had never been issued, or its execution attempted, and the party can neither claim an advantage from or derive a right under it. An "invalid" or void instrument cannot be amended or perfected. Not only so, but to allow its amendment in the manner proposed, would open the door to frauds upon the government, and endanger a due and necessary enforcement of the provisions of the statute. For, if the objection should not be taken, the defect would not probably be supplied, and would be in the power of the parties, by collusion or indifference, to withhold the required and demanded revenue. Upon the whole, not without some doubt, we think the safer and

better construction is, to hold the "process" or instrument, void or invalid, and that the appeal was properly dismissed.

Affirmed.